## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

**MATTHEW LANCLOS**, individually and on behalf of all other similarly situated,

      Plaintiff,

**v.**

**SOUTHWEST AIRLINES CO.,**

      Defendant.

---

### DEFENDANT SOUTHWEST AIRLINES CO.'S NOTICE OF REMOVAL

---

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1446, 1453, and D.C. COLO. LCivR 81.1, Defendant Southwest Airlines Co. ("Southwest") hereby invokes this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1332(d) and 1441(b) and seeks removal of this matter to the United States District Court for the District of Colorado as follows:

### I.      BACKGROUND

1.      This is a putative wage and hour class action lawsuit, and removal is proper pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

2.      On December 26, 2024, Plaintiff Matthew Lanclos, a flight attendant for Southwest, ("Plaintiff") filed a complaint in the District Court for the State of Colorado, Denver County, Case No. 2024-CV-34014, entitled *Lanclos v. Southwest* (the "Complaint").  A true and correct copy of Lanclos's Complaint is attached as Exhibit A-2.

3.      In his Complaint, Lanclos alleges that Southwest's compensation policies violate a variety of Colorado state wage and hour regulations including the Colorado Constitution art. XVIII, § 15, the Colorado Wage Act (CWA), C.R.S. § 8-4-101 *et seq.*, the Colorado Minimum

Wage Act (CMWA), C.R.S. § 8-6-101 *et seq.*, and the Colorado Overtime and Minimum Pay Standards Order ("COMPS Order") #39, 7 C.C.R. 1103-1 (collectively, "Colorado Wage-and-Hour Law"). Lanclos also seeks to represent a putative class of "[a]ll current and former employees of Southwest who were paid on an hourly basis for [Trip-for-Pay ("TFP")] hours and who worked in Colorado, from six years prior to the date this Complaint is filed until final judgment is entered." Exhibit A-2, at ¶ 17. Lanclos seeks purported unpaid minimum wages, unpaid overtime compensation, liquidated damages, penalties, interest, attorney' fees, pre- and post-judgment, and other relief on behalf of himself and the alleged putative class. *Id.*

4.     Southwest denies liability on all claims alleged in this action, denies that it violated or is subject to any Colorado Wage-and-Hour Law, denies that it engaged in any unlawful conduct, denies that class certification is proper, and reserves all rights on these issues. However, for purposes of meeting the jurisdictional requirements of removal ***only***, Southwest submits that this Court has subject matter jurisdiction over all claims alleged in this action under CAFA.

## II.     VENUE

5.     Lanclos's State Court Action was commenced in the District Court of the City and County of Denver, Colorado. Under 28 U.S.C. §§ 85, 1446, and 1453, therefore, Lanclos's State Court Action may be removed to this United States District Court for the District of Colorado, which embraces Denver County within its jurisdiction.

## III.     PROCEDURAL REQUIREMENTS

6.     Under 28 U.S.C. § 1446(a), attached as Exhibit A are copies of all proceedings, pleadings, and orders served the State Court Action. Southwest has, therefore, satisfied all the requirements for removal under 28 U.S.C. § 1446 and all other applicable rules.

## IV.    REMOVAL IS TIMELY

7.    Under 28 U.S.C. § 1447, Southwest is required to file its notice of removal within thirty (30) days of formal service.  *See Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999).  Southwest received formal service of Lanclos's Complaint on January 3, 2025. (*See* Exhibit A-5, Return of Service).  Because Southwest files this Notice of Removal on February 3, 2025, removal is timely.

8.    In addition, as required by 28 U.S.C. § 1446(c), this Notice of Removal has been filed within one year of the commencement of the State Court Action, which occurred on December 26, 2024.

## V.    REMOVAL JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

9.    CAFA was enacted in 2005 "to respond to perceived abusive practices by plaintiffs and their attorneys in litigating major class actions with interstate features in state courts."  *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1243 (10th Cir. 2009).  As the report of the Senate Judiciary Committee emphasizes, CAFA "is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly with a ***strong preference*** that interstate class actions should be heard in a federal court if properly removed by any defendant." S-Rep No. 109-14, at 43 (2005), *available at* 2005 WL 627977 (emphasis added); *see also Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) (same); *Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1262 (10th Cir. 2014) (same).  In keeping with those pronouncements, numerous circuits have recognized that "CAFA greatly expands federal jurisdiction over interstate class action lawsuits."  *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 569 (5th Cir. 2011) (footnote omitted); *see also Lewis v. Verizon Commons, Inc.*, 627 F.3d 395, 398 (9th Cir. 2010) (same); *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 823 (8th Cir. 2010) ("CAFA grants

broad federal jurisdiction over class actions and establishes narrow exceptions to such jurisdiction."); *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 342 (4th Cir. 2008) ("CAFA unquestionably expanded federal jurisdiction and liberalized removal authority."); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163-64 (11th Cir. 2006) ("The language and structure of CAFA itself indicates that Congress contemplated broad federal court jurisdiction" over class actions that satisfy CAFA's jurisdictional requirements, with "only narrow exceptions.").

10.    This Court has original jurisdiction pursuant to CAFA.  Under CAFA, federal courts have original jurisdiction over a class action whenever: (A) "the number of members of all proposed plaintiff classes in the aggregate is" more than 100, 28 U.S.C. §§ 1332(d)(2), (5)(B); (B) "any member of a [putative] class of plaintiffs is a citizen of a State different from any defendant," *id.* § 1332(d)(A); (C) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs," *id.* § 1332(d)(2); and (D) no exceptions to CAFA apply, *see* § 1332(d)(4). As detailed below, all CAFA requirements are satisfied in this case.

A.    **Lanclos's Putative Class Exceeds 100 Members.**

11.    For CAFA jurisdiction to attach, the number of all proposed putative class members in the aggregate must equal or exceed one hundred.  *See* 28 U.S.C. § 1332(d)(5)(B).

12.    Here, Lanclos defines the putative class as follows:

> All current and former employees of Southwest who were paid on an hourly basis for TFP hours and who worked in Colorado, from six years prior to the date this Complaint is filed until final judgment is entered.  (Exhibit A-2, at ¶ 17).

13.    As stated in the Complaint, Lanclos asserts that the putative class "is likely to be in the thousands."  Exhibit A-2, at ¶ 63.

14.    While Southwest disputes that Lanclos has alleged a proper class definition, based on its review and analysis of its timekeeping and payroll records, Southwest has confirmed that

that Southwest employed approximately 3,685 individuals as flight attendants in Colorado from 2018 to present.  Exhibit B at ¶ 6, Declaration of Sarah Hill.

15.     The numerosity requirement under CAFA is therefore clearly met.

**B.     Minimal Diversity of Citizenship Exists**

16.     "Under CAFA, a federal district court has subject matter jurisdiction 'over class actions . . . [when] minimal diversity is met (between at least one defendant and one plaintiff-class member).'"  *Dutcher v. Matheson*, 840 F.3d 1183, 1190 (10th Cir. 2016) (quoting *Coffey v. Freeport McMoran Copper & Gold* , 581 F.3d 1240, 1243 (10th Cir. 2009) (per curiam).

17.     Under CAFA, the minimal diversity requirement is met when at least one plaintiff is a citizen of a state in which none of the defendants are citizens.  28 U.S.C. § 1332(d)(3).

18.     Per Lanclos's Complaint, Lanclos is a resident-of and domiciled in Colorado, Exhibit A-2, at ¶15.  Lanclos is therefore a citizen of Colorado for diversity of citizenship purposes. *See Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014) (explaining that "a person is a citizen of a state if the person is domiciled in that state").

19.     For purposes of diversity jurisdiction, a corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its "principal place of business." 28 U.S.C. § 1332(c)(1).  To determine a corporation's principal place of business, the courts apply the "nerve center" test. *See Hertz Co. v. Friend*, 559 U.S. 77, 95 (2010).  In applying this test, courts seek to determine "the center of overall direction, control, and coordination" of a corporation, as well as where the top officers of the corporation are located and where "the bulk of a company's business activities visible to the public take place."  *Id.* at 96.

20.     Southwest is a corporation incorporated under the laws of Texas.  Exhibit B, at ¶ 2. Southwest's principal place of business is also Texas because its "nerve center" is in Texas.

Specifically, Southwest maintains its headquarters at 2702 Love Field Drive, Dallas, Texas 75235, where its officers direct, control, and coordinate the corporation's activities. Exhibit B, at ¶ 3.[1] Therefore, for the purposes of removal and pursuant to 28 U.S.C. § 1332(c), Southwest is, and has been for all times relevant to this action, a citizen of Texas.

21.     Accordingly, CAFA's minimal diversity requirement is satisfied because at least one of the plaintiffs (here, Lanclos—a citizen of Colorado) and defendant (here, Southwest—a citizen of Texas) are citizens of different states. 28 U.S.C. § 1332(d)(2).

**C.     The Aggregate Amount in Controversy Exceeds $5,000,000.**

22.     When minimal diversity is satisfied, CAFA confers original jurisdiction to the district courts of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1247 (10th Cir. 2012); *see also* 28 U.S.C. § 1332(d)(2)-(A).

23.     The amount in controversy is "not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation." *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008); *see also Hammond v. Stamps.com*, Inc., 844 F.3d 909, 912 (10th Cir. 2016) (Gorsuch, J.) ("At this stage, we're just trying to decide the forum for the dispute, not liability or damages. And a more aggressive inquiry into the likelihood of success on the merits would invite delays and costs more appropriately reserved for adjudicating the merits than choosing the forum."); *see also Valdez v. Metro. Prop. & Cas. Ins. Co.*, 867 F. Supp. 2d 1143, 1163–64 (D.N.M. 2012) ("The amount-in-controversy requirement is

---

[1] *See also Sw. Airlines Co. v. Roundpipe, LLC*, 375 F. Supp. 3d 687 (N.D. Tex. 2019) (finding Southwest's principal place of business to be Dallas, Texas).

an estimate of the amount that will be put at issue in the course of the litigation." (citation and internal quotation omitted)).

24.     "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S. Ct. at 554; *see also Raskas v. Johnson & Johnson*, 719 F.3d 884, 888 (8th Cir. 2013) ("The removing party's burden of describing how the controversy exceeds $5 million constitutes a pleading requirement, not a demand for proof." (citation omitted)).

25.     "The Tenth Circuit has held that a defendant need only establish jurisdictional facts that make it *possible* that the jurisdictional amount is 'in play.'" *Valdez*, 867 F.Supp.2d at 1184 (quoting *McPhail*, 529 F.3d at 955). A defendant may establish these facts by drawing inferences from the allegations in the Complaint, affidavits, or other evidence. *See McPhail*, 529 F.3d at 955–56; *see also Salazar v. GEICO Ins. Co.*, No. 1:10-cv-00118, 2010 WL 2292930, at *3 (D.N.M. Apr. 27, 2010) ("[T]he defendant may rely on an estimate of the potential damages from the allegations in the complaint."); *see also Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006) (stating that the amount in controversy may be met "by calculation from the complaint's allegations"). Whichever method a defendant uses, the burden of establishing the amount in controversy under CAFA jurisdiction is not an "onerous" burden to satisfy. *See, e.g., Manson v. GMAC Mortgage, LLC*, 602 F. Supp. 2d 289, 294 n.9 (D. Mass. 2009) (explaining that the amount in controversy is not an "onerous" burden to satisfy); *Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616, 2010 WL 2793650, *1 (E.D. Cal. July 14, 2010) (same).

26.     For purposes of determining the amount in controversy under CAFA, the claims of the individual class members are aggregated. 28 U.S.C. § 1332(d)(6) ("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in

controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."); *Toller v. Sagamore Ins. Co.*, 558 F. Supp. 2d 924, 930–31 (E.D. Ark. 2008) ("Since CAFA expressly contemplates aggregation, and CAFA's evident purpose is to expand federal jurisdiction, the proper approach to valuing claims for injunctive relief under CAFA seems to be to use the total benefit to the plaintiff class or the aggregate cost to the defendant." (quotation marks and citations omitted)).

27.    Southwest contends that Lanclos's claims are without merit, that neither Lanclos nor the putative class members are entitled to money or any other form of recovery, in any amount whatsoever, and that class certification would be inappropriate.  Solely for the purposes of meeting the jurisdictional requirements of removal, however, Southwest submits that the aggregate amount "in controversy" for all putative class members exceeds the sum or value of $5,000,000.[2]

28.    Lanclos seeks, among other things, recovery for allegedly unpaid minimum wages, unpaid overtime compensation, liquidated damages, penalties, interest, attorneys' fees, costs of litigation, and pre- and post-judgment interest on behalf of himself as well as the putative class. Accepting Lanclos's allegations as true, as must be done at this stage, the amount placed in controversy exceeds the $5,000,000 threshold for CAFA removal.  *See* 28 U.S.C. § 1332(d); *see Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995) (requiring the allegations to be taken as true).

---

[2]  In alleging the amount in controversy for purposes of removal, Southwest does not concede nor acknowledge in any way that the allegations in Lanclos's Complaint are accurate or that Lanclos or any putative class member(s) are entitled to any amount under any claim or cause of action. Nor does Southwest concede or acknowledge that any class should be certified, whether as alleged or otherwise, or that any or all of its current or former employees are entitled to any recovery in this case or are appropriately included in the putative classes.

29.     In establishing that the amount in controversy exceeds the $5,000,000 CAFA threshold, Southwest makes the following reasonable assumptions based on Lanclos's Complaint and the facts regarding Southwest's flight attendants in Colorado:

a.  During the putative class period, Southwest employed approximately 3,685 flight attendants in Colorado paid under Southwest's TFP compensation system.  Exhibit B, at ¶ 6.

b.  Lanclos alleges that his "claims are typical of the Similarly Situated Workers' claims because like the members of the Class, Lanclos was subject to Southwest's uniform policies and practices and were compensated in the same manner as others in the Class."  Exhibit A-2, at ¶ 64.

c.  During the putative class period, Plaintiff Lanclos worked an average of 398 flights per year.  Exhibit B, at ¶ 7.

d.  During the putative class period, Plaintiff Lanclos worked an average of 46 weeks per year.  Exhibit B, at ¶ 7.

e.  Lanclos alleges in his Complaint that "during periods of time with Southwest, [he] was paid an hourly rate of approximately $77.43." Exhibit A-2, at ¶ 35.

f.  Lanclos further alleges that he "regularly worked over 40 hours per workweek[.]" Exhibit A-2, at ¶ 36.

g.  Lanclos also alleges that he was "compensated in the same manner as others in the Class" and that members of the putative class likewise worked "more than 40 hours in a workweek."  Exhibit A-2, at ¶ 64.

h. For purposes of these calculating the amount in controversy only, it is therefore reasonable to assume that each member of the putative class was also paid an average "hourly rate"[3] of approximately $77.43 and worked, on average, a similar amount to Lanclos.

30.     CAFA's amount-in-controversy is satisfied here.  A brief review of (1) Lanclos's Minimum Wage & Overtime Claim, (2) statutory penalties allegations, and (3) request for attorneys' fees makes clear that Lanclos's Complaint alleges more than $5,000,000 in losses.

### 1.     *Minimum Wage & Overtime Claim*

31.     In his Complaint, Lanclos asserts a minimum wage and overtime claim under Colorado Wage-and-Hour Law.[4]  Exhibit A-2, at ¶ 22.

32.     Colorado Wage-and-Hour Law requires employers to pay employees for all time worked.  *See* C.R.S. § 8-4-103; C.R.S. § 8-6-106; COMPS Order, Rule 1.9, Rule 3, and Rule 4.

33.     Lanclos alleges that Southwest violated this requirement by only paying employees for their in-flight duties.  *Id.*, at ¶ 37.  As a result, Lanclos alleges, Southwest did not pay Lanclos or the putative class for any "on-duty, non-flying time" performed.  *Id.*, at ¶ 38.  Lanclos defines "on-duty, non-flying time" to include seven different categories, including:

a. The time that Lanclos and the Similarly Situated Workers arrived at the aircraft, which they were required to do 45 minutes to 75 minutes prior to the scheduled departure, and the closing of the boarding door;

---

[3]  Southwest disputes than any member of the putative class was paid on an "hourly rate" basis. Yet, for the purposes of calculating an amount in controversy, Southwest and the Court must accept Lanclos's allegations as true.  *See Laughlin*, 50 F.3d at 873.

[4]  Southwest denies that it is governed by any Colorado Wage-and-Hour Law.  However, for the purposes of calculating an amount in controversy, Southwest and the Court must accept Lanclos's allegations as true.  *See id*.

---

b. The time that Lanclos and the Similarly Situated Workers spent performing pre-flight job duties prior to the closing of the boarding door;

c. The time that Lanclos and the Similarly Situated Workers worked on the aircraft between the opening of the boarding door and the time that they stopped assisting with deplaning and performing other work duties;

d. The time that Lanclos and the Similarly Situated Workers spent traveling between planes;

e. The time that Lanclos and the Similarly Situated Workers spent at the gate prior to boarding due to delays;

f. The time that Lanclos and the Similarly Situated Workers spent traveling to and from hotels for overnight stays until the next scheduled flight; and

g. The time that Lanclos and the Similarly Situated Workers spent waiting in line, completing security screenings, COVID screenings, and walking to the gate prior to boarding.

34.    Because Southwest purportedly failed to pay for these categories of "on-duty, non-flying time," Lanclos alleges that "Southwest is liable to Lanclos and the [putative class] for unpaid minimum wages and unpaid overtime compensation[.]"  Exhibit A-2, at ¶ 85.

35.    Lanclos does not allege in his Complaint a total estimate regarding the amount of "on-duty, non-flying time" that the putative class members allegedly performed without pay. However, Lanclos does allege that Southwest should have compensated him and the putative class for the "45 minutes to 75 minutes" that each class member was required to spend at the aircraft "prior to the scheduled departure."  Exhibit A-2, at ¶ 38.  If each class member arrived at the aircraft 45 to 75 minutes before each flight's scheduled departure, the Court can reasonably assume that for each flight worked, each class member spent an average of one hour at the aircraft prior to departure.  Thus, given Lanclos's allegation that "during periods of time with Southwest, [he] was paid an hourly rate of approximately $77.43," Exhibit A-2, at ¶ 35, Lanclos's Complaint can be

construed to allege that every member of the putative class is owed approximately $77.43 of unpaid wages for each flight worked.

36.    Under these allegations, if each of the 3,685 Colorado-based flight attendants employed by Southwest during the putative class period worked **only 20 flights throughout the entire putative class period**, the amount in controversy would exceed $5,000,000.[5]  Of course, some flight attendants within the putative class worked much more than 20 flights during the putative class period.  Lanclos, for example, worked an average of 398 flights per year during the six-year putative class period.  Exhibit B, at ¶ 7.  Lanclos's minimum wage and overtime claim therefore, by itself, alleges damages greater than CAFA's amount-in-controversy requirement.[6]

### 2.    *Statutory Penalties*

37.    Statutorily imposed penalties and damages may also be considered in assessing whether the amount-in-controversy threshold has been met.  *See St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).

38.    In his Complaint, Lanclos asserts that he and the putative class are entitled to "mandatory penalties under C.R.S. § 8-4-109(3)(b)(I)" as well as "additional penalties under

---

[5]   The calculation is as follows: (3,685 flight attendants x 20 flights x $77.43 per flight = $5,706,591).   Of course, this is a conservative calculation because this calculation (1) only evaluates one category of Lanclos's **seven** alleged categories of "on-duty, non-flight time" and (2) assumes that each flight attendant worked only 20 total flights during the putative class period—a period of six years (Lanclos worked approximately 2,388 in that timeframe, Exhibit B, at ¶ 7). In the event that Lanclos challenges removal of this action, Southwest reserves the right to further investigate and include potential liability with respect to other alleged unpaid time for the remaining categories of "on-duty, non-flying time" and the total number of flights by the putative class members.

[6] In the event that Lanclos challenges removal of this action, Southwest reserves the right to further investigate and include potential liability with respect to Lanclos's second claim for rest breaks. *See* Ex. A-2, ¶ 7.

C.R.S. § 8-4-109(3)(b)(II)." Exhibit A-2, at ¶85. The Colorado regulation cited by Lanclos

mandates that:

> [I]f an employer fails or refuses to pay . . . all earned, vested, and
> determinable wages or compensation . . . within fourteen days after
> a civil action or administrative claim for the wages or compensation
> is sent to or served on the employer, the employer is liable to the
> employee or group of similarly situated employees for the amount
> of the earned, vested, determinable, and unpaid wages or
> compensation plus an automatic penalty of:
>
>> (I) The greater of two times the amount of the unpaid wages
>> or compensation or one thousand dollars; or
>>
>> (II) If the employee can show that the employer's failure or
>> refusal to pay wages or compensation was willful, the greater
>> of three times the amount of the unpaid wages or
>> compensation or three thousand dollars.

39.     Lanclos alleges three separate times throughout his Complaint that Southwest's

alleged violations of Colorado Wage-and-Hour Law were willful. Exhibit A-2, at ¶ 48, 84, & 93.

Taking Lanclos's pleadings as true, C.R.S. § 8-4-109(3)(b)(II) would require that certain damages

be multiplied as a penalty against Southwest. Applying this multiplier to any of Lanclos's claims

will unquestionably result in an amount in controversy greater than $5,000,000.

### 3.     Attorneys' Fees

40.     Attorneys' fees are properly included in an amount-in-controversy calculation. *See*

*Woodmen of World Life Ins. Society v. Manganaro*, 342 F.3d 1213, 1217–18 (10th Cir. 2003).

Several times throughout his Complaint, Lanclos alleges that employers found in violation of

Colorado Wage-and-Hour Law "are presumptively liable for attorneys' fees and costs incurred by

the employee in obtaining their unpaid wages or compensation." *E.g.,* Exhibit A-2 at ¶ 79. Class

---

actions tried to verdict can involve (often unreasonable) fee requests asking for over a million dollars, and this case would presumably be no different.[7]

### 4.    Summary of Amount in Controversy

41.    Southwest has "proven jurisdictional facts that make it possible that the jurisdictional amount is 'in play.'" *Valdez*, 867 F. Supp. 2d 1189 (quoting *McPhail*, 529 F.3d at 955). The $5,000,000 amount-in-controversy requirement is satisfied by Lanclos's minimum wage and overtime claim alone and does not even include Lanclos's rest break claim. Even if the requested relief from Lanclos's claims do not exceed $5,000,000, when added to the amounts alleged for statutory penalties and attorneys' fees, Lanclos alleged relief totals well over $5,000,000. In sum, the threshold of $5,000,000 necessary to establish CAFA jurisdiction is easily satisfied.

42.    Even if the Court "is uncertain about whether all matters in controversy in a purported class action do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case." *See* Senate Report on the Class Action Fairness Act of 2005 Dates of Consideration and Passage, S. Rep. 109-14, 42, 2005 WL 627977, *36, 2005 U.S.C.C.A.N. 3, 40; *see also Chavis v. Fid. Warranty Servs., Inc.*, 415 F. Supp. 2d 620, 625–26 (D.S.C. 2006) (quoting same).

### D.    No CAFA Exceptions Apply.

43.    CAFA contains certain jurisdictional exceptions, none of which apply here.

---

[7] Southwest makes no representation as to the reasonableness of attorneys' fees in this amount. Nor does Southwest concede that an award of attorneys' fees in this amount would be warranted *even if* Lanclos and the putative class prevailed on their claims.

44.     The "Local Controversy Exception" does not apply to the present case because Southwest is not a citizen of Colorado, the state in which the action was originally filed.  *See* 28 U.S.C. § 1332(d)(4)(A)(i)(II)(cc).

45.     The "Home State Exception" also does not apply to this case because Southwest, the sole and primary named defendant, is not a citizen of Colorado, the state in which the action was originally filed.  *See* 28 U.S.C. § 1332(d)(4)(B).

46.     Accordingly, all the requirements for federal jurisdiction under 28 U.S.C. § 1332(d) are satisfied, and removal of this action is proper under 28 U.S.C. §§ 1441, 1446, and 1453.

## VI.     CONCLUSION

47.     For the reasons stated herein, pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, the State Court Action may be removed to federal district court, and Southwest respectfully requests that it be so removed.

WHEREFORE, Southwest respectfully gives notice of and removes this action to this Court.

Dated:  February 3, 2025

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

/s/ *William J. Leone*
_____

**William J. Leone**
Atty Reg #11403
william.leone@nortonrosefulbright.com

1225 Seventeenth Street, Suite 3050
Denver, CO  80202
Telephone:    (303) 801-2700
Facsimile:     (303) 801-2777

**Kimberly F. Cheeseman**  *(pro hac motion forthcoming)*
Texas State Bar No. 24082809
kimberly.cheeseman@nortonrosefulbright.com

**Jesika Silva Blanco** *(pro hac motion forthcoming)*
Texas State Bar No. 24098428
jesika.blanco@nortonrosefulbright.com

1550 Lamar Street, Suite 2000
Houston, TX  77010-3095
Telephone:    (713) 651-5151
Facsimile:     (713) 651-5246

**Josh Owings** *(pro hac motion forthcoming)*
Texas State Bar No. 24117274
josh.owings@nortonrosefulbright.com

**Pete Curran** *(pro hac motion forthcoming)*
Texas State Bar No. 24130314
pete.curran@nortonrosefulbright.com

2200 Ross Avenue, Suite 3600
Dallas, TX  75201-7932
Telephone:    (713) 651-5151
Facsimile:     (713) 651-5246

*Attorneys for Southwest Airlines Co.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and accurate copy of the foregoing pleading was filed electronically with the Court and electronically served on all counsel of record via the CM/ECF System on February 3, 2025.

*/s/ William J. Leone*
William J. Leone

---