# Exhibit A-2

| | |
|---|---|
| **DISTRICT COURT**<br>**CITY AND COUNTY OF DENVER, COLORADO**<br><br>Court Address:   1437 Bannock St., Rm. 256<br>                           Denver, CO 80202<br>Court Phone:     303 606 2300 | DATE FILED<br>December 26, 2024 9:26 PM<br>FILING ID: 4613426B3C0DA<br>CASE NUMBER: 2024CV34014 |
| **Plaintiff:**<br><br>MATTHEW LANCLOS, individually and on behalf of all others similarly situated,<br><br>v.<br><br>**Defendant:**<br><br>**SOUTHWEST AIRLINES CO.** | <br><br><br><br><br><br><br><br>▲ **COURT USE ONLY** ▲ |
| Attorneys for Plaintiff:<br><br>**Matthew S. Parmet**, Atty Reg. # 53046<br>**PARMET PC**<br>2 Greenway Plaza, Ste. 250<br>Houston, TX 77046<br>phone  713 999 5200<br>matt@parmet.law<br><br>**Don J. Foty**, Texas Bar No. 24050022<br>(*seeking admission pro hac vice*)<br>dfoty@hftrialfirm.com<br>**Fazila Issa**, Texas Bar No. 24046136<br>(*seeking admission pro hac vice*)<br>fissa@hftrialfirm.com<br>**HODGES & FOTY, LLP**<br>2 Greenway Plaza, Suite 250<br>Houston, Texas 77046<br>Telephone: (713) 523-0001<br>Facsimile: (713) 523-1116 | **Case No:** _____<br><br>**Div.:** ____     **Ctrm.:** ____ |
| **PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT** ||

**INTRODUCTION**

1.	Southwest implemented an illegal policy of paying its flight attendants, including Plaintiff Matthew Lanclos and similarly situated workers, for only Trip-for-Pay ("TFP") hours of each scheduled flight based on the mileage of the flight.

2.	Under this policy, the "time clock" starts for pay purposes when the aircraft pushes away from the gate at an airport at the beginning of a flight and stops when the aircraft comes to a halt upon arrival at its destination.

3.	Southwest did not pay Lanclos and similarly situated workers their minimum or overtime wage rates for all of the hours they spent working for Southwest, including for the work they performed on Southwest's premises, on duty, at their prescribed workplaces, or for travel time within Colorado.

4.	The non-flying hours of work performed by Lanclos and similarly situated workers constitute compensable time worked under Colorado law.

5.	By failing to pay for such time, Southwest violated Colorado law.

6.	Southwest's conduct violates Colorado law because Southwest failed to pay Lanclos and the similarly situated workers their minimum wage and overtime compensation for all time worked as required by the Colorado Constitution art. XVIII, § 15, the Colorado Wage Act (CWA), C.R.S. § 8-4-101 *et seq.*, the Colorado Minimum Wage Act (CMWA), C.R.S. § 8-6-101 *et seq.*, and the Colorado Overtime and Minimum Pay Standards Order ("COMPS Order") #39, 7 C.C.R. 1103-1 (collectively, "Colorado Wage-and-Hour Law").

7.	Specifically, Colorado Wage-and-Hour Law requires employers to pay employees their agreed wage rates–their minimum or overtime wage rates–for all time worked. *See* COMPS Order, Rules 3, 4.

8.	Under Colorado Wage-and-Hour Law, "time worked" includes: (1) time during which an employee is required to be on the employer's premises; (2) time during which an employee is required to be on duty; (3) time during which an employee is required to be at the prescribed workplace; and (4) time spent on travel for the benefit of the employer. COMPS Order, Rule 1.9.

9.	Lanclos bring this lawsuit as a class action under Colorado Rule of Civil Procedure 23 to recover unpaid minimum wages, unpaid overtime compensation, mandatory penalties under C.R.S. § 8-4-109(3)(b)(I), additional penalties under C.R.S. § 8-4-109(3)(b)(II), and attorneys' fees and costs due to them and the similarly situated workers. *See* C.R.S. §§ 8-4-109(3)(b), 8-4-110, 8-6-118.

## JURISDICTION & VENUE

10.  This Court has personal jurisdiction over Southwest because Southwest has had sufficient minimum contacts with Colorado to confer jurisdiction over Southwest. Specifically, Southwest does business in Colorado, maintains offices in Colorado, advertises in Colorado, markets and sells to Colorado customers, and employs Colorado residents. The violations of law forming the basis of this action also occurred in Colorado.

11.  Venue is proper in this district because a substantial part of the events and omissions giving rise to Lanclos's claims occurred in the City and County of Denver, including many of the alleged wrongs.

12.  Lanclos worked for Southwest in the City and County of Denver.

13.  Lanclos was denied minimum wages and overtime compensation by Southwest in the City and County of Denver.

14.  Southwest operates in the City and County of Denver. In particular, Southwest operates out of Denver International Airport.

## PARTIES

15.  **Plaintiff Matthew Lanclos** is a natural person who is a resident and citizen of Colorado.

16.  Lanclos worked as a flight attendant for Southwest in Colorado.

17.  Lanclos represents a class of similarly situated persons Colorado Rule of Civil Procedure 23, which is comprised of:

> All current and former employees of Southwest who were paid on an hourly basis for TFP hours and who worked in Colorado, from six years prior to the date this Complaint is filed until final judgment is entered.

18.  Throughout this Complaint, the putative class members are also referred to as the "Similarly Situated Workers."

19.  Defendant Southwest Airlines Co. ("Southwest") is a Texas corporation.

20.  Southwest's headquarters and principal place of business is in Texas.

21.  Southwest may be served by service of process on its registered agent, **The Prentice-Hall Corporation System, Inc., 1900 W. Littleton Blvd., Littleton, CO 80120**, or by any other method authorized by law.

### COVERAGE UNDER COLORADO WAGE-AND-HOUR LAW

22. At all material times, Southwest has been governed by and subject to Colorado Wage-and-Hour Law.

23. At all material times, Southwest has been an employer within the meaning of Colorado Wage-and-Hour Law. *See* C.R.S. § 8-4-101(6); COMPS Order, Rule 1.6.

24. At all material times, Lanclos and the Similarly Situated Workers have been employees within the meaning of Colorado Wage-and-Hour Law. *See* C.R.S. § 8-4-101(5); COMPS Order, Rule 1.5.

25. At all material times, Southwest was and is legally responsible for the unlawful conduct, policies, practices, acts, and omissions as described and set forth in this Complaint, as the employer of Lanclos and the Similarly Situated Workers .

### FACTUAL BACKGROUND

**A.    Lanclos's employment with Southwest.**

26. Southwest is a major airline in the United States, with over 66,000 employees.

27. Southwest operates in several airports in Colorado: Denver International Airport ("DEN") in Denver, Colorado Springs Airport ("COS") in Colorado Springs, Yampa Valley Regional Airport ("HDN") in Hayden, and Montrose Regional Airport ("MTJ") in Montrose.

28. As one of the busiest airports in the world, DEN is the largest airport in Southwest's network, with an average of over 300 daily Southwest flights during peak travel season.

29. Lanclos works as an hourly, non-exempt flight attendant for Southwest.

30. Lanclos has worked for Southwest since June 2005.

31. Throughout his employment with Southwest, Lanclos has regularly worked for Southwest in Colorado.

32. Since April 2013, Lanclos has been based out of DEN.

33. Lanclos has worked with hundreds of other Southwest flight attendants in Colorado.

34. Lanclos is paid by the hour.

35. For example, during periods of time with Southwest, Lancos was paid an hourly rate of approximately $77.43.

36. During his employment, Lanclos has regularly worked over 40 hours per workweek, 12 hours per workday, and/or 12 hours per shift.

**B.  Southwest failed to pay for all time worked.**

37. At all material times, Southwest implemented a policy of paying its flight attendants, including Lanclos and the Similarly Situated Workers, for only TFP hours for each scheduled flight. Under this policy, the time clock for pay purposes starts when the aircraft pushes away from the gate at the beginning of a flight and stops when the aircraft arrives at its destination. The TFP hours do not include any other "duty time." In particular, pursuant to Southwest's policy, Southwest did not pay flight attendants for any non-flying work time in Colorado from when the flight attendants arrived at an airport to when they were either released at the end of their scheduled flight or required to travel to a hotel for an overnight stay, until the next scheduled flight.

38. Specifically, Southwest did not pay the minimum or overtime wage rates to Lanclos and the Similarly Situated Workers for all the on-duty, non-flying time they were required to work, including but not limited to:

   a. The time that Lanclos and the Similarly Situated Workers arrived at the aircraft, which they were required to do 45 minutes to 75 minutes prior to the scheduled departure, and the closing of the boarding door;

   b. The time that Lanclos and the Similarly Situated Workers spent performing pre-flight job duties prior to the closing of the boarding door;

   c. The time that Lanclos and the Similarly Situated Workers worked on the aircraft between the opening of the boarding door and the time that they stopped assisting with deplaning and performing other work duties;

   d. The time that Lanclos and the Similarly Situated Workers spent traveling between planes;

   e. The time that Lanclos and the Similarly Situated Workers spent at the gate prior to boarding due to delays;

   f. The time that Lanclos and the Similarly Situated Workers spent traveling to and from hotels for overnight stays until the next scheduled flight; and

    g.  The time that Lanclos and the Similarly Situated Workers spent waiting in line, completing security screenings, COVID screenings, and walking to the gate prior to boarding.

  39.  This non-flying work time should have been paid because it constitutes time worked under Colorado Wage-and-Hour Law.

  40.  "Time worked" under Colorado Wage-and-Hour Law includes the following separate categories of an employee's time: (1) time during which an employee is required to be on the employer's premises; (2) time during which an employee is required to be on duty; (3) time during which an employee is required to be at the prescribed workplace; and (4) time spent on travel for the benefit of the employer. COMPS Order, Rule 1.9.

  41.  The non-flying work hours are compensable because they were required by Southwest. Lanclos and the Similarly Situated Workers were required to be on Southwest's premises, on duty, or at their prescribed workplace as provided under Colorado law. The aircraft to which they were assigned, the airport out of which they were operating, or the gate at which their assigned aircraft was scheduled to arrive satisfy these requirements. Lanclos and the Similarly Situated Workers were also required to wait in line, complete screenings, and then walk to the gate as well as travel to and from hotels for overnight stays until the next scheduled flight.

  42.  During non-flying work hours, Lanclos and the Similarly Situated Workers were required to be on duty, dressed in a Southwest uniform, and abiding by Southwest policies, practices, and procedures.

  43.  Lanclos and the Similarly Situated Workers were required to comply with Southwest's instructions and were subject to discipline, including possible termination, if they violated Southwest's policies, practices, and procedures during the non-flying work hours.

  44.  During non-flying work hours, Southwest compelled Lanclos and the Similarly Situated Workers to perform specific tasks, such as addressing passenger concerns, performing pre-flight duties, and providing regular and necessary services to passengers.

  45.  Non-flying work hours belonged to and were controlled by Southwest and were primarily for the benefit of Southwest. Southwest directed, commanded, and restrained Lanclos and the Similarly Situated Workers; prevented them from using that time effectively for their own purposes; and subjected them to Southwest's control.

  46.  As a result of Southwest's conduct, Lanclos and the Similarly Situated Workers are owed significant unpaid minimum wages and unpaid overtime compensation for the time they worked in Colorado without pay. Non-flying hours that Lanclos and the Similarly Situated Workers were required to work resulted in more than 40 hours per workweek, 12 hours per workday, and/or 12 hours per shift.

47. Records reflecting non-flying work hours are in Southwest's possession and will be sought in discovery during this action.

48. At all material times, Southwest knew, or through the exercise of reasonable diligence should have known, that its failure to pay Lanclos and the Similarly Situated Workers minimum or overtime wage rates for non-flying work hours violated the Colorado Wage-and-Hour Law. As a result, Southwest's conduct was willful.

49. This Complaint constitutes a CWA written demand that Southwest immediately compensate Lanclos and the Similarly Situated Workers for all their unpaid, non-flying hours worked during the relevant time period.

**C.  Southwest did not pay under the continuous workday rule.**

50. Pursuant to the continuous workday rule, once the first compensable activity is performed, the continuous workday has started, and all subsequent activities performed are compensable regardless of the amount of time each specific individual activity takes. *See* Colo. Dept. of Labor and Empl., Div. of Lab. Standards and Statistics, Interpretive Notice & Formal Opinion ("INFO") #20A. The continuous workday rule requires compensation from the start of the first compensable activity to the last compensable activity. *See id.* Specifically, INFO #20A states:

> Even if time isn't otherwise time worked, it counts as part of a '**continuous workday**' of time worked, if it's **after** other time **starts**, and **before** other time **worked ends** – excluding long enough breaks [when **completely relieved from duty**.]

*Id.* (emphasis in original).

51. Under Colorado Wage-and-Hour Law, "time worked" includes: (1) time during which an employee is required to be on the employer's premises; (2) time during which an employee is required to be on duty; (3) time during which an employee is required to be at the prescribed workplace; and (4) time spent on travel for the benefit of the employer. COMPS Order, Rule 1.9.

52. Therefore, Lanclos and the Similarly Situated Workers are entitled to compensation from the time they first arrive at the airport to the time when the aircraft pushes back away from the gate at the beginning of a flight. Similarly, Lanclos and the Similarly Situated Workers are entitled to compensation from the time the aircraft comes to a stop at the end of a flight to the time they exit the airport. Lanclos and the Similarly Situated Workers are also entitled to the time spent traveling to and from hotels for overnight stays until the next scheduled flight.

53. Lanclos and the Similarly Situated Workers were non-exempt employees.

54. Lanclos and the Similarly Situated Workers were paid on an hourly rate basis.

55. When they worked more than 40 hours in a workweek, 12 hours per workday, and/or 12 hours per shift, they were entitled to overtime compensation.

56. Due to substantial non-flying work hours, Lanclos and the Similarly Situated Workers were not paid for all time worked each day and are owed significant unpaid minimum wages and unpaid overtime compensation.

57. Southwest's method of paying Lanclos and the Similarly Situated Workers in violation of Colorado law was not based on a good faith and reasonable belief that their conduct complied with the law. Southwest knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

**D.   Southwest did not provide required rest breaks.**

58. Under Colorado Wage-and-Hour Law, employers must "authorize and permit a compensated 10-minute rest period for each 4 hours of work, or major fractions thereof." COMPS Order, Rule 5.2.

59. Thus,

> When an employee is not authorized and permitted a required 10-minute rest period, his or her shift is effectively extended by 10 minutes without compensation. Because a rest period requires 10 minutes of pay without work being performed, work during a rest period is additional work for which additional pay is not provided. Therefore, a failure by an employer to authorize and permit a 10-minute compensated rest period is a failure to pay 10 minutes of wages at the employee's agreed-upon or legally required (whichever is higher) rate of pay.

COMPS Order, Rule 5.2.4.

60. Southwest failed to authorize and permit Lanclos and the Similarly Situated Workers to take a 10-minute rest period when they worked in Colorado.

61. Southwest did not authorize or allow any rest period at all.

62. Instead, Lanclos and the Similarly Situated Workers regularly worked long hours, well over 4 hours, without any breaks. They were not permitted to take any breaks after 4 hours of work. Instead, they had to work their entire shift without breaks, in violation of Colorado Wage-and-Hour Law.

### CLASS ACTION ALLEGATIONS

63. <u>Numerosity</u>: The number of members in the Class is believed to exceed 40 and in fact, is likely to be in the thousands. This volume makes bringing the claims of each individual member of the Class before this Court impracticable. Likewise, joining each individual member of the Class as a Plaintiff in this action is impracticable. Furthermore, the identity of the members of the Class will be determined from Southwest's records, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Similarly Situated Workers and Southwest.

64. <u>Typicality</u>: Lanclos's claims are typical of the Similarly Situated Workers' claims because like the members of the Class, Lanclos was subject to Southwest's uniform policies and practices and were compensated in the same manner as others in the Class. Southwest failed to pay the Similarly Situated Workers for all hours they worked. Additionally, members of the Class worked substantially more than 40 hours in a workweek, 12 hours in a workday, and/or 12 hours in a shift as non-exempt employees. Accordingly, Lanclos and the Similarly Situated Workers have been uncompensated and/or under-compensated in weeks when they worked less than 40 hours, weeks when they worked more than 40 hours, workdays when they worked more than 12 hours, and/or shifts when they worked more than 12 hours as a result of Southwest's common policies and practices which failed to comply with Colorado law. As such, Lanclos's claims are typical of the claims of the Similarly Situated Workers. Lanclos and the Similarly Situated Workers sustained damages arising out of and caused by Southwest's common course of conduct in violation of law as alleged herein.

65. <u>Adequacy</u>: Lanclos is a representative who will fairly and adequately protect the interests of the Similarly Situated Workers because it is in their interests to effectively prosecute the claims herein alleged to obtain the unpaid minimum wages and unpaid overtime compensation, and penalties required under Colorado law. Lanclos has retained attorneys who are competent in both class actions and wage-and-hour litigation. Lanclos do not have any interest which may be contrary to or in conflict with the claims of the Similarly Situated Workers they seek to represent.

66. <u>Commonality</u>: Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact and law include, but are not limited to:

   a.  Whether the unpaid, non-flying work hours are "time worked";

   b.  Whether Southwest failed to pay Lanclos and the Similarly Situated Workers the minimum wage rate for unpaid, non-flying work time;

  c. Whether Southwest failed to pay Lanclos and the Similarly Situated Workers the proper overtime rate for all time worked;

  d. Whether Southwest failed authorize or permit Lanclos and the Similarly Situated Workers to take 10-minute rest breaks after 4 hours of work;

  e. The amount of unpaid time; and

  f. The proper measure of damages sustained by Lanclos and the Similarly Situated Workers.

67. <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any member of the Class could afford to pursue individual litigation against a company the size of Southwest, doing so would unduly burden the court system. Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Southwest.

68. A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court. By concentrating this litigation in one forum, judicial economy and parity among the claims of individual class members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. Notice of the pendency and any resolution of this action can be provided to the Similarly Situated Workers by mail, electronic mail, text message, print, broadcast, internet, and/or multimedia publication. The identity of the members of the Class are readily identifiable from Southwest's records.

69. This type of case is well-suited for class action treatment because: (1) Southwest's practices, policies, and/or procedures were uniform; (2) the burden is on Southwest to prove it properly compensated its employees including any potential exemptions that might apply; and (3) the burden is on Southwest to accurately record hours worked by employees. Ultimately, a class action is a superior form to resolve the Colorado claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Southwest to pay Lanclos and the Similarly Situated Workers per applicable Colorado laws.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF—FAILURE TO PAY MINIMUM AND OVERTIME WAGES AS TO LANCLOS AND THE CLASS MEMBERS

70. Lanclos incorporates all allegations in paragraphs 1 to 69.

- 10 -

71. At all material times, Southwest has been an employer within the meaning of Colorado Wage-and-Hour Law. *See* C.R.S. § 8-4-101(6); COMPS Order, Rule 1.6.

72. At all material times, Lanclos and the Similarly Situated Workers have been employees within the meaning of Colorado Wage-and-Hour Law. *See* C.R.S. § 8-4-101(5); COMPS Order, Rule 1.5.

73. Colorado Wage-and-Hour Law requires employers to pay employees for all time worked. *See* C.R.S. § 8-4-103; C.R.S. § 8-6-106; COMPS Order, Rule 1.9, Rule 3, and Rule 4.

74. Under the COMPS Order, Rule 1.9:

> 1.9  'Time worked' means time during which an employee is performing labor or services for the benefit of an employer, including all time s/he is suffered or permitted to work, whether or not required to do so.
>
> 1.9.1  Requiring or permitting employees to be on the employer's premises, on duty, or at a prescribed workplace (but not merely permitting an employee completely relieved from duty to arrive or remain onpremises) — including but not limited to putting on or removing required work clothes or gear (but not a uniform worn outside work as well), receiving or sharing work-related information, security or safety screening, remaining at the place of employment awaiting a decision on job assignment or when to begin work, performing clean-up or other duties 'off the clock,' clocking or checking in or out, or waiting for any of the preceding — shall be considered time worked that must be compensated.
>
> 1.9.2  'Travel time' means time spent on travel for the benefit of an employer, excluding normal home to work travel, and shall be considered time worked.

75. Under the CWA, employers must pay employees their agreed wage rate, which must be at least the applicable minimum wage, for all hours worked. *See* C.R.S. § 8-4-103; *see also* COMPS Order, Rule 3.

76. The CWA provides that "[a]ny agreement … purporting to waive or modify [an] employee's rights in violation of this article shall be void." *See* C.R.S. § 8-4-121; *Barlow v. Westin DEN Operator, LLC*, No. 1:20-cv-01612-DDD-KLM, 2020 U.S. Dist. LEXIS 259845, at *9-13 (D. Colo. Dec. 2, 2020) (holding that Colorado Wage-and-Hour Law, not the union's collective bargaining agreement, governed minimum wages owed to union employees in Colorado).

77. Under the CMWA, employers must pay employees at least the applicable minimum wage, which in the City and County of Denver must be at least the Denver minimum wage, for all time worked. *See* C.R.S. § 8-6-101; *see also* COMPS Order, Rule 3; *id*. at Rule 3.2 ("If an employee is covered by multiple minimum or overtime wage requirements, the requirement providing a higher wage, or otherwise setting a higher standard, shall apply"); D.R.M.C. § 58-1 *et seq*. (mandating minimum wage for employees who work in the City and County of Denver).

78. The wages due to employees under Colorado Wage-and-Hour Law generally must include overtime compensation at a rate of one and one-half times the employees' regular rate of pay for all hours worked in excess of 40 hours per workweek, 12 hours per workday, and/or 12 hours per shift. *See* COMPS Order, Rule 4.

79. Employers who violate the CWA by failing to pay wages earned by an employee, and who continue to violate the CWA by failing to tender such wages within 14 days of receiving a "written demand" are liable for significant civil penalties. *See* C.R.S. § 8-4-109(3).

80. Employers who violate the CWA are presumptively liable for attorney's fees and costs incurred by the employee in obtaining their unpaid wages or compensation. C.R.S. § 8-4-110(b).

81. Employers who violate the CMWA by failing to pay minimum wages and/or overtime compensation for hours worked over 40 hours per workweek, 12 hours per workday, and/or 12 hours per shift are liable for the unpaid minimum wages and/or unpaid overtime compensation, plus reasonable attorney's fees and costs. *See* C.R.S. § 8-6-118.

82. Southwest violated the CWA by failing to pay Lanclos and the Similarly Situated Workers their hourly wage rates for all of the time that they worked, and by failing to pay overtime compensation to Lanclos and the Similarly Situated Workers at a rate of one and one-half times their regular rates for all of the hours that they worked over 40 hours per workweek, 12 hour per workday, and/or 12 hours per shift. *See* C.R.S. § 8-4-103; COMPS Order, Rules 3 and 4.

83. Southwest also violated the CMWA by failing to pay Lanclos and the Similarly Situated Workers the Denver minimum wage for all of the time that they worked, and by failing to pay overtime compensation to Lanclos and the Similarly Situated Workers at a rate of one and one-half times the Denver minimum wage for all of the hours that they worked over 40 hours per workweek, 12 hours per workday, and/or 12 hours per shift. *See* C.R.S. § 8-6-101; COMPS Order, Rules 3 and 4.

84. Southwest knew, or through the exercise of reasonable diligence should have known, that its policy violated Colorado Wage-and-Hour Law and, as a result, Southwest's violations were willful. *See* C.R.S. § 8-4-109(3)(b)(II); *see also* C.R.S. § 8-4-122.

85. Based on its violations of Colorado Wage-and-Hour Law, Southwest is liable to Lanclos and the Similarly Situated Workers for unpaid minimum wages and unpaid overtime compensation, mandatory penalties under C.R.S. § 8-4-109(3)(b)(I) (if full payment of all wages is not tendered within 14 days of Southwest's receipt of this Complaint), additional penalties under C.R.S. § 8-4-109(3)(b)(II), reasonable attorney's fees, and the costs incurred by Lanclos and the Similarly Situated Workers in this action. *See* C.R.S. §§ 8-4-109(3)(b), 8-4-110; C.R.S. § 8- 6-118.

### SECOND CLAIM FOR RELIEF—FAILURE TO PROVIDE REST BREAKS AS TO LANCLOS AND THE CLASS MEMBERS

86. Lanclos incorporates all allegations in paragraphs 1 to 69.

87. Under Colorado Wage-and-Hour Law, employers must "authorize and permit a compensated 10-minute rest period for each 4 hours of work, or major fractions thereof." COMPS Order, Rule 5.2.

88. COMPS Order 5.2.4 requires:

When an employee is not authorized and permitted a required 10-minute rest period, his or her shift is effectively extended by 10 minutes without compensation. Because a rest period requires 10 minutes of pay without work being performed, work during a rest period is additional work for which additional pay is not provided. Therefore, a failure by an employer to authorize and permit a 10-minute compensated rest period is a failure to pay 10 minutes of wages at the employee's agreed-upon or legally required (whichever is higher) rate of pay.

89. Southwest failed to authorize and permit Lanclos and the Similarly Situated Workers to take a 10-minute rest period when they worked in Colorado.

90. Southwest violated Colorado law by not authorizing or permitting Lanclos and the Similarly Situated Workers to take a 10-minute rest period for each 4 hours of work.

91. Under Colorado Wage-and-Hour Law, an employee who works during what should be a rest period and is not provided additional pay that unprovided rest period has received less than the legal minimum wage for all hours worked.

92. Thus, these employees are entitled to monetary damages for providing the employer with an equivalent number of minutes of work to without additional compensation.

93. Southwest knew, or through the exercise of reasonable diligence should have known, that its policy violated Colorado Wage-and-Hour Law and, as a result, Southwest's violations were willful.

94.     Therefore, Lanclos and the Similarly Situated Workers are entitled to ten minutes of wages for each rest period that they failed to receive.

### RELIEF SOUGHT

Lanclos, individually and on behalf of the Similarly Situated Workers, prays that the Court:

a.  Certify a class action under C.R.C.P. 23;

b.  Appoint Lanclos as representative of the C.R.C.P. 23 class;

c.  Appoint Lanclos's counsel as counsel for the C.R.C.P. 23 class;

d.  Find Southwest liable for violations of Colorado Wage-and-Hour Law;

e.  Award all unpaid minimum wages, unpaid overtime compensation, liquidated damages, penalties, interest, and/or restitution available to Lanclos and the C.R.C.P. 23 class under Colorado law;

f.  Award attorneys' fees to Lanclos and the C.R.C.P. 23 class;

g.  Award costs of this action to Lanclos and the C.R.C.P. 23 class;

h.  Award pre- and post-judgment interest at the highest rates allowed by law; and

i.  Order such other and further legal and equitable relief the Court deems just, necessary, and proper.

Date:  December 26, 2019

Respectfully submitted,

*/s/ Matthew S. Parmet*
By: _____
**Matthew S. Parmet**, Atty Reg. # 53046
**PARMET PC**
2 Greenway Plaza, Ste. 250
Houston, Texas 77046
Houston, TX 77046
phone  713 999 5200
matt@parmet.law

>**Don J. Foty**, Texas Bar No. 24050022
>(*seeking admission pro hac vice*)
>dfoty@hftrialfirm.com
>**Fazila Issa**, Texas Bar No. 24046136
>(*seeking admission pro hac vice*)
>fissa@hftrialfirm.com
>**HODGES & FOTY, LLP**
>2 Greenway Plaza, Suite 250
>Houston, Texas 77046
>Telephone: (713) 523-0001
>Facsimile: (713) 523-1116
>
>**Attorneys for Plaintiff**

### JURY DEMAND

Lanclos demands a trial by jury on all issues.

>*/s/ Matthew S. Parmet*
>_____
>Matthew S. Parmet

- 15 -